STEVEN L. DERBY, ESQ. (SBN 148372)
CELIA L. McGUINNESS, ESQ. (SBN 159420)
DEBORAH GETTLEMAN, ESQ. (SBN 267309)
DERBY, McGUINNESS & GOLDSMITH, LLP
300 Lakeside Drive Suite 1000
Oakland, CA 94612
Telephone: (510) 987-8778
Facsimile:  (510) 359-4414
info@dmglawfirm.com

Attorney for Plaintiffs
GENE ANDERSON AND
PAULINE HORVATH-ANDERSON

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GENE ANDERSON AND<br>PAULINE HORVATH-ANDERSON<br><br>        Plaintiffs,<br><br>    v.<br><br>KAYAL, INC. a California Corporation,<br>dba BAYPOINT HEALTHCARE<br>CENTER, and THEKKEK HEALTH<br>SERVICES, INC.,<br><br>        Defendants. | CASE NO. 19-7589<br><br>Civil Rights<br><br>**COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**<br><br>1. **Violation of the Americans with Disabilities Act Title II**<br><br>2. **Violation of the Rehabilitation Act of 1973, Section 504**<br><br>3. **Violation of the Unruh Act [Cal. Civil Code § 51]**<br><br>4. **Denial of Full and Equal Access [Cal. Civil Code §§ 54 And 54.1]**<br><br>5. **Violation of Cal. Gov't Code 11135**<br><br>DEMAND FOR JURY TRIAL |

**INTRODUCTION**

1. Plaintiff GENE ANDERSON is among the estimated 35,000,000 Americans who have hearing loss to such a degree that it substantially affects his ability to understand and comprehend the spoken word. Plaintiff has a service dog which alerts Mr. Anderson to sounds and people and plays a crucial role in ensuring Plaintiff's safety.   Plaintiff Pauling Horvath-Anderson is a person with a disability which affects her ability to live independently in many ways.  She relies on her husband, Plaintiff Anderson, as her aide for assistance throughout the day.

2. Defendants, which collectively own and operate the BayPoint Healthcare Center skilled nursing facility, discriminated against Plaintiff Anderson by excluding his service dog from their facility, where his mother-in-law resides.  They discriminated against Plaintiff Horvath-Anderson by denying her request for a modification of the policy.  She has been directly harmed by Defendants' discrimination because her visits to her mother are curtailed without Plaintiff Anderson there as her aide.

3. This Complaint is brought as the result of Defendants' intentional violation of the anti-discrimination provisions of the Americans With Disabilities Act, the California Unruh Act, the Disabled Persons Act, and the California Penal Code.  As a result of Defendants' illegal acts, Plaintiffs suffered denial of their civil rights and emotional injuries.  They seek an injunction to enjoin these Defendants and this business establishment to end their discriminatory policy and practices so that Plaintiffs will not continue to face discrimination on foreseeable future visits to the facility.

**JURISDICTION**

4. This Court has original jurisdiction of this action under the Americans with Disabilities Act of 1990, 42 U.S.C. §§12101 *et seq*. (the "ADA") and Section 504 of the Rehabilitation Act of 1973 ("the Rehab. Act").

5. The Judicial District of the United States District Court for the Northern District of California has supplemental jurisdiction over the State law claims alleged in this Complaint pursuant to 28 U.S.C. §1367(a).  All the claims derive from a common nucleus of operative facts

and arose out of the same transactions.  The State law claims are so related to the federal action that they form part of the same case or controversy and the actions would ordinarily be expected to be tried in one judicial proceeding.

**VENUE**

6.        Venue in the Judicial District of the United States District Court for the Northern District of California is in accordance with 28 U.S.C. §1391(b) because Plaintiffs' claims arose within this Judicial District and the property that is the subject of this action is located in this District in the City of Hayward, Alameda County, California.

**THE PARTIES**

7.        At all times herein relevant, Plaintiffs each are persons with a disability as defined in 42 U.S.C. § 12102 and California Government Code § 12926(l).  Plaintiff Gene Anderson's hearing loss substantially limits a major life activity, hearing.  Plaintiff Pauline Horvath-Anderson has rheumatoid arthritis, a condition which substantially limits several major life activities, including the abilities to ambulate, use her arms, eat, and toilet.  She uses a power wheelchair for mobility.

8.        Plaintiffs are and at all times relevant herein have been lawful wedded spouses.

9.        Coquette is Plaintiff Anderson's service dog.  She is individually trained to perform the task of alerting Plaintiff to sounds he cannot hear, such as people calling his name, alarms, doorbells, and loud noises such as boiling tea kettles.  Her presence enables him to go into public independently and with confidence.  She was purchased for use as a service dog in 2009, after the recommendation of Plaintiff Anderson's physician.  She goes everywhere in public with Plaintiff Anderson.  She has been admitted to hospitals and doctors' offices, among other public accommodations.

10.       Defendant KAYAL, INC., a California Corporation is, according to public records, the licensee and facility owner and operator of the BayPoint Healthcare Center skilled nursing facility ("BayPoint"), located at 442 Sunset Blvd., Hayward, California.

11.       Defendant THEKKEK HEALTH SERVICES, INC., a California Corporation is, according to public records, the owner of the property of the Bay Point Healthcare skilled nursing

1  facility, located at 442 Sunset Blvd., Hayward, California.

2      12.    Based upon a public records review, Plaintiffs are informed and believe that KAYAL, INC., is doing business as BAYPOINT HEALTHCARE CENTER, located at 442 Sunset Blvd., Hayward, California.

    13.    Based upon a public records review, Plaintiffs are informed and believe and thereupon allege that Defendants are the co-owners and/or co-operators of BayPoint Healthcare Center ("the facility").

    14.    Plaintiffs are informed and believe and on such basis allege that each of the Defendants herein is the agent, servant, employee, representative, joint venturer and/or common enterprise affiliate of each of the other defendants, and performed all acts and omissions stated herein within the scope of such agency or employment or representative capacity or joint venture or common enterprise, and is responsible, in some manner, for the acts and omissions of the other Defendants in proximately and legally causing the damages complained of herein.

    15.    Plaintiffs are informed and believe, and on such a basis allege, that each of the named Defendants are and at all times herein relevant were the alter ego of each of the other co-Defendants, such that adherence to the fiction of the separate existence of these defendants as an entity distinct from other Defendants would permit an abuse of the corporate privilege and would sanction fraud and/or promote injustice.

## STATEMENT OF FACTS

    16.    Plaintiff Horvath-Anderson's mother has lived at the BayPoint Healthcare Center skilled nursing facility for many years. Plaintiffs Anderson and Horvath Anderson had the habit and practice of visiting her there, with Plaintiff Anderson's service dog, an average of once a month.

    17.    On Thanksgiving Day, November 23, 2017, Plaintiffs went to visit Plaintiff Horvath-Anderson's mother, with Coquette. When they came through the front door Cynthia Lagatuz, manager of the facility, was standing in the entrance to the dining hall with her hands on her hips, blocking their path. She told both Plaintiffs, "Go straight to your mother's room." Both Plaintiffs were upset, angry and frustrated by her calling them out loudly and publicly, limiting

1  their access to the facilities, and treating them like "less than" other patients' visitors. Because
2  they did not want to make a scene and they were afraid of retaliation against their mother,
3  Plaintiffs chose to take no action at that time.

4  18.  Because it was Thanksgiving, the Facility had food and drink available in the
5  common dining and activity room for residents and their families. Plaintiff Anderson went to
6  pick up drinks to take back to his mother-in-law's room. He had Coquette with him. As he
7  entered the dining room, Ms. Lagatuz blocked his path. She told him he could not bring his
8  service dog into the room. Plaintiff Anderson explained that Coquette was a service dog and
9  offered to show Ms. Lagatuz her tags identifying her as such. Mr. Lagatuz refused to look at
10 them. She neither contested that Coquette was a service dog, nor asked Plaintiff Anderson what
11 tasks the dog was trained to provide. She did not make any individualized assessment of
12 Coquette and offered no evidence that the dog posed a direct threat to health or safety. She said
13 dogs were not allowed because someone might have an allergy.  She stood in Mr. Anderson's
14 way until he left the dining room.

15 19.  Mr. Anderson was upset:  He did not understand Ms. Lagutz's position and her
16 refusal to have a conversation; he was humiliated to be the focus of unwanted attention with so
17 many people in the room; and he was embarrassed to return empty-handed to his mother-in-law's
18 room, unable to provide the drinks people had requested.

19 20.  On December 27, 2017, Plaintiffs sent Ms. Lagutz a letter, laying out the facts of
20 what happened. The letter informed her that excluding the service dog was a violation of the
21 Americans with Disabilities Act. The letter concluded, "Please respond to this incident and how
22 you propose to handle our future trips to Bay Point." Ms. Lagutz made no response.

23 21.  From that point on, Plaintiff Anderson did not go into the facility when they went
24 to visit Plaintiff Horvath-Anderson's mother. He stayed in the car instead. Plaintiff Horvath-
25 Anderson relies upon Plaintiff Anderson as her personal caregiver in all activities of daily living.
26 Because he was not present to assist her, Ms. Horvath-Anderson had to cut short her visits with
27 her mother. As a result of Mr. Anderson's service dog being excluded, for all of 2018 and half of
28 2019 Mr. Anderson no longer visited his mother-in-law. Ms. Horvath-Anderson visited her

mother less frequently – approximately once every two months -- and stayed less time than she would have liked.

22. In July 2019, Mr. Anderson began going back into the facility with his service dog. However, Plaintiffs are afraid to have Plaintiff Anderson go into the common areas with his service dog, as Ms. Lagutz has never responded to their letter or rescinded her ban. Therefore, Plaintiff Anderson is still excluded from the common areas of the facility. He cannot accompany his mother-in-law to those areas, so all three stay in her room. They are uncomfortable and afraid Ms. Lagutz will come at any time to accost them, make them a public spectacle and order them to leave. Their visits are less frequent and shorter as a result. Plaintiffs are denied full use and enjoyment of the common areas and the services provided to family of residents. They are denied their right to visit their loved one.

23. During 2017, Plaintiff Horvath-Anderson brought a complaint to the Department of Public Health about deficits in her mother's care at Bay Point. On May 28, 2019, the Department found the complaint substantiated and implemented a Plan of Correction. Plaintiffs had hoped that the question of access for the service dog would also be addressed by the Department's report, but it was not.

24. During the investigation process, Plaintiff Horvath-Anderson brought the issue up directly in a meeting with the Department of Public Health representative and two administrators of Bay Point Healthcare. She provided the administrators with a copy of her December 2017 letter to Ms. Lagutz and explained how Plaintiff Anderson was excluded from the facility and she was impeded in her ability to visit her mother. The two administrators accepted the letter but made no response.

25. Because Plaintiff Horvath-Anderson's mother continues to live at the facility, Plaintiffs will go to the facility in the future to visit her. Plaintiffs have no choice but to return, as their beloved family member lives there. Because Defendants' facility managers have neither responded to Plaintiffs' letter nor addressed the ban when invited to do so in a face-to-face meeting, Plaintiffs reasonably believe they will continue to be subjected to Defendants' unlawful policy and practice. They have brought this lawsuit to force Defendants to change their

discriminatory and illegal policy, to compensate Plaintiff Anderson for excluding him from the common areas of the facility, and to compensate Plaintiff Horvath-Anderson for the loss of her personal aide as the result of Defendants' discrimination against him.   Plaintiffs seeks an injunction to protect the rights of disabled persons, including Plaintiffs, to be accompanied by a service dog, and seeks an award of statutory damages, compensatory damages, and treble damages, and an award of statutory attorney fees, litigation expenses and costs.

**FIRST CAUSE OF ACTION:**
**DISCRIMINATION IN VIOLATION OF TITLE II OF THE AMERICANS WITH DISABILITES ACT OF 1990**

26.  Plaintiffs replead and incorporate the preceding paragraphs by reference as if fully set forth herein.

27.  In 1990 the United States Congress made findings that laws were needed to more fully protect "some 43 million Americans with one or more physical or mental disabilities; that historically society has tended to isolate and segregate individuals with disabilities;" that "such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem"; that "the Nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living and economic self-sufficiency for such individuals"; and that "the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous. . .." On information and belief, in 2019 more than 50 million persons are entitled to ADA protection.

28.  Congress stated as its purpose in passing the Americans With Disabilities Act (42 USC § 12101(b)):

> (1) to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;
>
> (2) to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities;
>
> (3) to ensure that the Federal government plays a central role in enforcing the standards established in this act on behalf of individuals with disabilities; and

(4) to invoke the sweep of Congressional authority, including the power to enforce the 14th Amendment and to regulate commerce, in order to address the major areas of discrimination faced day to day by people with disabilities.

29.   The Americans With Disabilities Act prohibits discrimination by public accommodations. It states, "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases, or leases to, or operates a place of public accommodation." 42 USC § 12182(a).

30.   "Public accommodations" include a "professional office of a health care provider, hospital, or other service establishment." 42 USC §12181(7)(F). Defendants are the owner and operator of a facility that provides health care.

31.   The ADA defines a person with a disability as someone with "a physical or mental impairment that substantially limits one or more major activities of such individual." 42 U.S.C. 12102. Major life activities include "caring for oneself, performing manual tasks, . . . hearing, eating, . . . walking, standing, lifting, [and] bending . . .." 42 U.S.C. § 12102(2)(A). Under this standard both plaintiffs are persons with disabilities.

32.   The specific prohibitions against discrimination include:

**(i)** Denial of participation
It shall be discriminatory to subject an individual or class of individuals on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements, to a denial of the opportunity of the individual or class to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity.

**(ii)** Participation in unequal benefit
It shall be discriminatory to afford an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals.

**(iii)** Separate benefit
It shall be discriminatory to provide an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual,

> licensing, or other arrangements with a good, service, facility, privilege, advantage, or accommodation that is different or separate from that provided to other individuals, unless such action is necessary to provide the individual or class of individuals with a good, service, facility, privilege, advantage, or accommodation, or other opportunity that is as effective as that provided to others.

42 U.S.C. § 12182(b)(2)(A)(i)-(iii).  More specifically, a place of public accommodation "*shall* modify [its] policies, practices, or procedures to permit the use of service animals to persons with a disability." 28 C.F.R. § 36.302(c)(1) (emph. added).

33. A "service animal" is defined as: "any guide dog, signal dog, or other animal individually trained to do work or perform tasks for the benefit of an individual with a disability, including, but not limited to, guiding individuals with impaired vision, alerting individuals with impaired hearing to intruders or sounds, providing minimal protection or rescue work, pulling a wheelchair, or fetching dropped items." 28 C.F.R. § 36.104.  Coquette is a dog individually trained to perform tasks to alert Plaintiff Anderson, a person with impaired hearing, to sounds.

34. As of November 23, 2017, and thereafter, Defendants continue to deny full and equal access to Plaintiff Anderson and to discriminate against him on the basis of his disability, wrongfully denying to Plaintiff the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations of Defendants' premises. 42 USC § 12182; 28 CFR §36.104, § 36.301.

35. Defendants also deny full and equal access to Plaintiff Anderson on the basis of her disability.  In a face-to-face meeting, Plaintiff Horvath-Anderson directly presented their previous letter to Defendant's representatives, requesting that Defendants modify their policy to enable Plaintiff Anderson to bring his service dog into the facility freely.  Defendant did not grant that reasonable accommodation request.

36. Plaintiff Horvath-Anderson also has been discriminated against based on her association with Plaintiff Anderson.  She has been directly harmed by his exclusion from the facilities with his service dog, as she cannot use him as her personal aide, and therefore cannot eat, toilet, or perform other tasks of daily living while at the facility.  As a result, she has seen her

1  mother less often and stays less time than she would otherwise do.

2    37. As a direct and proximate result of the aforementioned acts, Plaintiffs have each suffered humiliation, hardship, anxiety, indignity, and significant mental and emotional anguish.

3    38. Plaintiffs seeks relief pursuant to remedies set forth in section 204(a) of the Civil Rights Act of 1964 (42 USC § 2000(a)-3(a)), and pursuant to Federal Regulations adopted to implement the Americans With Disabilities Act.  The acts and omissions of defendants as complained of herein are continuing on a day by day basis to have the effect of willfully and wrongfully excluding Plaintiffs and any other members of the public who are similarly disabled and/or who require the assistance of a service dog from full and equal access to that public business establishment.  The actions of defendants excluding plaintiff's service dog are an expression of the policy of defendants.  Such acts and omissions are the cause of fear, intimidation, humiliation and mental and emotional suffering of Plaintiffs in that these actions continue to treat Plaintiffs as second-class citizens and serve to discriminate against them on the sole basis that they are persons with a disability.

  39. Plaintiffs wish to return to and patronize this public accommodation.  However, they are unable, so long as such acts and omissions of Defendants continue, to achieve equal access to and use of this business establishment.  They are intimidated and deterred from visiting as much, or for as long, as they would like to do.  The acts of defendants have proximately caused and will continue to cause irreparable injury to plaintiff if not enjoined by this Court.  Plaintiffs intend to return to this public accommodation but cannot enjoy full and equal access to the goods, services, facilities, privileges, advantages, or accommodations of the facility until Defendants cease their discriminatory practices.

### SECOND CAUSE OF ACTION:
### VIOLATION OF § 504 OF THE REHABILITATION ACT OF 1973

  40. Plaintiffs replead and incorporate the preceding paragraphs by reference as if fully set forth herein.

  41. Section 504 of the Rehab Act of 1973 prohibits discrimination against individuals with disabilities in the programs and activities of recipients of federal financial assistance.  29

1  U.S.C. § 794, *et seq*.

2     42.   The regulations promulgated under the Act provide that it is discrimination to: 1) deny a qualified person the opportunity to participate in or benefit from a federally funded service; 2) provide an opportunity to participate or benefit from the federally funded service that is not equal to the one provided to others; 3) provide an aid, benefit or service that is not as effective as that provided to others; and 4) provide different or separate aid, benefits or services unless they are equally effective to those provided others. 45 CFR § 84.4(b).

   43.   At all relevant times, Plaintiffs are "otherwise qualified" to receive the benefits and services because they are the family of a resident at Defendants' program. Each of them is "handicapped" within the meaning of the statute because they each have a physical impediment which substantially limits one or more of major life activities. 29 U.S.C. § 706(8)(B).

   44.   At all relevant times Coquette was a service dog individually trained to do work or perform tasks for the benefit of Plaintiff Anderson and the work or tasks performed were directly related to his disability.

   45.   As the owners and operators of a skilled nursing facility, at all times relevant to this action Defendants were a recipient of federal financial assistance within the meaning of Section 504, including but not limited to Medicare and Medicaid funds and/or other subsidies and/or reimbursements for medical care.

   46.   The "program" which Defendants provide is a skilled nursing facility that provides services such as activities and amenities for patients and their families, e.g., holiday parties, places to dine, and places to sit while visiting; and policies relating to visits by family and friends.

   47.   Through their acts and omissions described herein, Defendants have violated Section 504 and its implementing regulations. Plaintiffs were denied the benefit or services solely by reason of their disability. Plaintiff Anderson's service dog has been excluded, resulting in the exclusion of both Plaintiff Anderson and Plaintiff Horvath-Anderson, who could not have full access to Defendant's program without the assistance of Plaintiff Anderson. They each were and on an ongoing basis are denied the opportunity to participate in or benefit from Defendants' federally funded services. They also were and are provided service(s) that were not equal to those

provided to other family visitors.

48. Defendants also directly rejected Plaintiff Anderson's request to be accommodated in his disability, when he tried to explain that Coquette was a service dog needed for his hearing disability, and who refused even to listen to him. Furthermore, Defendants directly rejected Plaintiff Horvath-Anderson's request that both she and Plaintiff Anderson be accommodated in their disabilities when she raised the issue of excluding Coquette during the DPS investigation and who did not respond to her.

49. Defendants committed the acts and omissions alleged herein with intent, deliberate indifference, and/or reckless disregard of Plaintiff's rights. This exclusion of Coquette was intentional. Defendants are on actual notice that both Plaintiffs are persons with disabilities and have expressly requested that Plaintiff Anderson be allowed to have his service dog in the facility. In the face of those express requests, Defendants' refusal to limit Mr. Anderson's access with Coquette rises to at least deliberate disregard of Plaintiffs' need for policy modifications in order to enable their full and equal access to Defendants' program and services.

50. As a direct and proximate result of the aforementioned acts, Plaintiffs have each suffered humiliation, hardship, anxiety, indignity, and significant mental and emotional anguish.

51. The acts and omissions of defendants as complained of herein are continuing on a day by day basis to have the effect of willfully and wrongfully excluding Plaintiffs and any other members of the public who are similarly disabled and/or who require the assistance of a service dog from full and equal access to that public business establishment. The actions of defendants excluding plaintiff Anderson's service dog are an expression of the policy of defendants. Such acts and omissions are the cause of fear, intimidation, humiliation and mental and emotional suffering of Plaintiffs in that these actions continue to treat them as second-class citizens and serve to discriminate against them on the sole basis that they are persons with a disability.

52. Plaintiffs wish to return to and patronize the program and services at this Facility. However, they are unable, so long as such acts and omissions of Defendants continue, to achieve equal access to and use of this business establishment. They are intimidated and deterred from visiting as much as they would like to do. The acts of defendants have proximately caused and

will continue to cause irreparable injury to plaintiff if not enjoined by this Court.  Plaintiffs intend to return to this public accommodation but cannot enjoy full and equal access to the goods, services, facilities, privileges, advantages, or accommodations of the facility until Defendants cease their discriminatory practices.

53.     Pursuant to 29 U.S.C. § 794a, Plaintiffs are entitled injunctive relief, damages, and reasonable attorneys' fees and costs.

### THIRD CAUSE OF ACTION:
### VIOLATION OF THE UNRUH ACT

54.     Plaintiffs replead and incorporate the preceding paragraphs by reference as if fully set forth herein.

55.     At all times herein mentioned, the Unruh Civil Rights Act, California Civil Code § 51(b) provided that:

> All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, or medical condition are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

56.     Furthermore, a violation of the Americans With Disabilities Act of 1990 also constitutes a violation of the Unruh Act.  Civ.C. §51(f).

57.     Plaintiffs at all relevant times each have been a person with a disability and/or medical condition within the meaning of the Unruh Act.  Gov.C. § 12926.

58.     At all relevant times Plaintiff Anderson's service dog was individually trained to do work or perform tasks for the benefit of Plaintiff Anderson.  The work or tasks performed were directly related to his disability.

59.     Defendants' skilled nursing facility is a business establishment within the meaning of the Unruh Act.  Defendants are the owners and operators of the business establishment.

60.     By virtue of the acts and omissions alleged herein, Defendants have violated the Unruh Act.  Plaintiff Anderson has been directly discriminated against.  Plaintiff Horvath-Anderson has been directly discriminated against and also discriminated against based on her

1 association with Plaintiff Anderson.

2   61.   As a direct and proximate result of the aforementioned acts, Plaintiffs have suffered humiliation, hardship, anxiety, indignity, and significant mental and emotional anguish.

   62.   Plaintiffs each are entitled to declaratory and injunctive relief, as well as up to three times their actual damages but no less than $4,000 per violation, and reasonable attorneys' fees and costs. Civ.C. § 52(a).  They each also seek reimbursement of their attorney fees, litigation costs and expenses. Id.

   63.   Defendants' behavior was intentional with full knowledge that Plaintiff Anderson relies on his service animal for assistance in daily living.  Both he and Plaintiff Horvath-Anderson expressly requested that the service animal be allowed to move freely in the facility.  In the face of the medical necessity and legal obligation to permit plaintiff's service animal, Defendants deliberately and after mature consideration violated the civil and criminal law with deliberate disregard for Plaintiffs' civil rights.

   64.   The acts and omissions of defendants as complained of herein are continuing on a day-by-day basis to have the effect of willfully and wrongfully excluding Plaintiffs and any other members of the public who are similarly disabled and/or who require the assistance of a service dog from full and equal access to that public business establishment.  The actions of defendants excluding plaintiff's service dog are an expression of the policy of defendants.  Such acts and omissions are the cause of fear, intimidation, humiliation and mental and emotional suffering of Plaintiffs in that these actions continue to treat Plaintiffs as second-class citizens and serve to discriminate against them on the sole basis that they are persons with a disability.

   65.   Plaintiffs wish to return to and patronize this business establishment.  However, they are unable, so long as such acts and omissions of Defendants continue, to achieve equal access to and use of this business establishment.  They are intimidated and deterred from visiting as often and as long as they would like to do.  The acts of defendants have proximately caused and will continue to cause irreparable injury to plaintiff if not enjoined by this Court.

///

///

## FOURTH CAUSE OF ACTION:
## VIOLATION OF THE CALIFORNIA DISABLED PERSONS ACT

66. Plaintiffs replead and incorporate the preceding paragraphs by reference as if fully set forth herein.

67. The Disabled Persons Act grants to disabled persons "the full and free use of the . . . public buildings, medical facilities, including hospitals, clinics, and physicians' offices, public facilities, and other public places." Civ.C. § 54. Furthermore, "Individuals with disabilities shall be entitled to full and equal access. . . to accommodations, advantages, facilities, medical facilities, including hospitals, clinics, and physicians' offices. . .." *Id.* at § 54.1(a)(1).

68. Civil Code § 54.2(a) specifically protects the right of "every individual with a disability" "to be accompanied by a guide dog, signal dog, or service dog, especially trained for the purpose, in any of the places specified in Section 54.1." Defendants' skilled nursing facility is a public accommodation and a medical facility within the meaning of the statute.

69. Further, any violation of the Americans With Disabilities Act (as pled in the First Cause of Action) also constitute a violation of Civil Code §§ 54(c) and § 54.1(d).

70. Plaintiffs are each a person with a disability within the meaning of the statute. Gov.C. § 12926.

71. Plaintiff Anderson has been directly discriminated against. Plaintiff Horvath-Anderson has been directly discriminated against and also discriminated against based on her association with Plaintiff Anderson.

72. As a result of the denial of equal access to the facilities of defendants' business, Plaintiffs have each suffered violation of their civil rights and suffered discomfort and injury, mental and emotional shock, emotional distress, embarrassment and humiliation. Defendants' actions and omissions.

73. Civil Code § 54.3(b) makes violators liable for damages and attorney fees. "Any person or persons, firm or corporation who denies or interferes with admittance to or enjoyment of the public facilities as specified in Sections 54 and 54.1 or otherwise interferes with the rights of an individual with a disability under Sections 54, 54.1 and 54.2." This section also specifies,

1  "'Interfere,' for purposes of this section, includes, but is not limited to, preventing or causing the
2  prevention of a guide dog, signal dog, or service dog from carrying out its functions in assisting a
3  disabled person." Plaintiffs do not seek injunctive relief under Civil Code section 55.

4      74. At all times relevant to this complaint Defendants were aware and/or were made
5  aware of their duties under the Americans With Disabilities Act and California law to refrain
6  from establishing discriminatory policies against physically disabled persons. Defendants'
7  establishment of their discriminatory policy to deny entry to persons with service dogs, and their
8  implementation of such a discriminatory policy against Plaintiffs was intentional. It indicates
9  actual and implied malice toward Plaintiffs and conduct carried out by Defendants with a
10 conscious disregard for the rights and safety of the disabled plaintiffs, and justify an award of
11 treble damages pursuant to California Civil Code § 54.3, in an amount sufficient to make an
12 example of defendants, according to proof.

13     75. Defendants' actions were knowingly illegal and in violation of the Penal Code. At
14 all times relevant to this action, California Penal Code section 365.5(b) stated:

> (b) No blind person, deaf person, or disabled person and his or her specially trained guide dog, signal dog, or service dog shall be denied admittance to accommodations, advantages, facilities, <u>medical facilities, including hospitals, clinics, and physicians' offices</u>, . . . hotels, lodging places, places of public accommodation, amusement, or resort, and other places to which the general public is invited within this state because of that guide dog, signal dog, or service dog.

20 (Emphasis added.) Defendants' commission of a crime, of which plaintiff Anderson was the
21 victim, is an additional basis for imposition of treble damages.

**FIFTH CAUSE OF ACTION:
VIOLATION OF CALIFORNIA GOVERNMENT CODE §11135,
DISCRIMINATION UNDER PROGRAM RECEIVING FINANCIAL ASSISTANCE
FROM THE STATE**

26     76. California Government Code section 11135(a) provides, "No person in the State of
27 California shall, on the basis of...disability, be unlawfully denied full and equal access to the
28 benefits of, or be unlawfully subjected to discrimination under, any program or activity

that…receives any financial assistance from the state." The regulations forbid the denial of aids, benefits or services on the basis of disability or the provision of ineffective or lesser services than provided others on account of disability. 2 CCR § 11154.

77. At all relevant times, Plaintiffs are and were qualified to receive the benefits and services because they are the family of a current resident at Defendants' program. Each Plaintiff is "handicapped" within the meaning of the statute because they each have a physical impediment which substantially limits one or more of major life activities.

78. At all relevant times Coquette was a service dog individually trained to do work or perform tasks for the benefit of Plaintiff Anderson and the work or tasks performed were directly related to his disability.

79. On information and belief, as a skilled nursing facility, at all times relevant to this action Defendants were a recipient of State financial assistance within the meaning of Section 504, including but not limited to Medicaid funds and/or other subsidies and/or reimbursements for medical care.

80. The program or activity which Defendants provide is a skilled nursing facility that provides services such as activities and amenities for patients and their families, *e.g.*, holiday parties, places to dine, and places to sit while visiting; and policies relating to visits by family and friends.

81. Through its acts and omissions described herein, Defendants have violated Section 11135 and its implementing regulations. Plaintiffs were denied the benefit or services solely by reason of their disability. Plaintiff Anderson's service dog has been excluded, resulting in the exclusion of both Plaintiff Anderson and Plaintiff Horvath-Anderson, who could not have full access to Defendants' program without the assistance of Plaintiff Anderson. They each were and on an ongoing basis are denied the opportunity to participate in or benefit from Defendants' federally funded services. They also were and are provided service(s) that were not equal to those provided to other family visitors.

///

82. Defendants also directly rejected Plaintiff Anderson's request to be accommodated in his disability, when he tried to explain that Coquette was a service dog needed for his hearing disability, and who refused even to listen to him.  Furthermore, Defendants directly rejected Plaintiff Horvath-Anderson's request that both she and Plaintiff Anderson be accommodated in their disabilities when she raised the issue of excluding Coquette during the DPS investigation and who did not respond to her.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs pray this Court:

1) For injunctive relief ordering defendants to comply immediately with federal and state law regarding service animals, and requiring them to provide disabled-accessible patient rooms;

2) For the Court to retain jurisdiction over the defendants until such time as the Court is satisfied that defendants' unlawful policies, practices, acts and omissions, and maintenance of inaccessible public facilities as complained of herein no longer occur, and cannot recur;

3) For general, compensatory and statutory damages in an amount within the jurisdiction of this Court;

4) For treble damages;

5) For restitution;

6) For attorney fees and costs pursuant to the ADA, California Civil Code sections 52 and 54.3 and California Code of Civil Procedure § 1021.5 (Plaintiff does not seek injunctive relief under Civil Code section 55);

7) For all costs of suit;

8) For pre-judgment interest pursuant to California Civil Code § 3291;

9) For such other and further relief as the Court may deem just and proper.

///
///

Date:  November 18, 2019          DERBY, McGUINNESS & GOLDSMITH, LLP

|   |   |
|---|---|
| | /s/ Celia McGuinness |
| By: | CELIA McGUINNESS, Esq. |
| | Attorneys for Plaintiffs |

### DEMAND FOR JURY

Plaintiff hereby demand a jury for all claims for which a jury is permitted.

Date: November 18, 2019              DERBY, McGUINNESS & GOLDSMITH, LLP

|   |   |
|---|---|
| | /s/ Celia McGuinness |
| By: | CELIA McGUINNESS, Esq. |
| | Attorneys for Plaintiffs |